IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-87-FL

| LAURA PONTONES, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOS TRES MAGUEYES, INC.; AYOTLAN, INC.; TEQUILA, INC.; ELIBORIO NAVARRO; IGNACIO NAVARRO; FRANCISCO SANCHEZ; JORGE MEZA; SAN ISIDRO, INC.; JALISCO, INC.; TEPATITLAN, LLC; PITAYO, INC.; EL NUEVO SAN JUAN, LLC; TRISTAN, LLC; ZOCALO, INC.; MOCAMBO, INC.; NAVARRO, INC.; JORGE ZAMBRANO AYALA; ALFONSO FABIAN NAVARRO; JOSE VICTOR LEON; DANIEL NAVARRO; MARIA LEON; LEOPOLDO TORRES; RAMON NAVARRO; and LEONOR FABIAN,[1] | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ORDER |
| | ) | |
| Defendants. | ) | |

    This matter is before the court on motions to dismiss variously filed by defendants Navarro, Inc., Mocambo, Inc., San Isidro, Inc. ("corporate moving defendants"), together with Leonor Fabian, Ramon Navarro, and Alfonso Fabian Navarro ("individual moving defendants") (collectively referred to as "moving defendants"). (DE 119, 121, 123). The motions have been

---

[1]     The court constructively amends its case caption to reflect dismissal of former defendant Jose Javier Ibarra where the court, on plaintiff's motion (DE 133), dismissed the only claims asserted against him on February 10, 2021.

briefed fully, and in this posture the issues raised are ripe for ruling. For the reasons that follow, the motions are granted.

## STATEMENT OF THE CASE

Plaintiff commenced this putative collective and class action on March 1, 2018, and filed the operative second amended complaint on February 13, 2020,[2] asserting defendants, who are corporate and individual owner-operators of Mexican restaurants across North Carolina and Virginia along with various corporate officers and employees of those corporations, violated provisions of the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA"). Plaintiff claims defendants failed to pay her and putative class-members[3] overtime wages, failed to pay employees receiving tips any wages, and made unlawful deductions from plaintiff and others' wages. Plaintiff seeks unpaid overtime premiums, unpaid straight-time compensation, reimbursement for unlawful deductions, liquidated damages, and attorneys' fees and costs.

On May 11, 2020, moving defendants, having been joined by the filing of plaintiff's second amended complaint, filed the instant motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure to state a claim.[4] Plaintiff filed unified response to the motions, and moving defendants filed a single joint reply.[5]

---

[2] Plaintiff filed a first amended complaint, as of right, on April 16, 2018. The court stayed the action for a period of time in 2019, to allow the parties to engage in settlement efforts. In February 2020, the court granted plaintiff leave to file second amended complaint and dismissed as moot her motion to certify a collective action under the FLSA and a class under Federal Rule of Civil Procedure 23(a). Hereinafter all references to the complaint or "Compl." in citations are to the operative second amended complaint, unless otherwise specified.

[3] Plaintiff has filed notices of the consent to join suit as party plaintiffs for individuals named Alma Giselle Guerrero Rivera, Miriam Martinez, Alma Rivera Ramos, Oscar Nolasco, and Carlos Gutierrez Godinez ("opt-in plaintiffs"). (DE 82, 88, 93).

[4] As discussed herein, the court analyzes moving defendants' motions under Rule 12(b)(6).

[5] While the instant motions were pending, this matter was reassigned to the undersigned. Upon reassignment, on January 28, 2021, the court entered an order regarding planning and scheduling. In response thereto, the parties

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff worked as a non-tipped food runner at a Raleigh, North Carolina, restaurant location[6] from approximately July 2015 until April 28, 2016. During this time, plaintiff typically worked six days per week, from 10:00 a.m. until 10:00 p.m. with an unpaid 2.5-hour break. Plaintiff approximates she worked 57 hours a week as a food runner. For her work, plaintiff was paid $900 in cash biweekly as a flat rate, regardless of overtime hours worked. Further, $100 would be deducted from this payment if plaintiff missed a day of work or was late to work. Plaintiff alleges that other similarly situated workers were compensated in the same manner.

Plaintiff also worked from August 2017 until November 20, 2017, as a tipped server at a Morrisville, North Carolina, restaurant location. In this period, plaintiff typically worked five to six days per week, from 10:00 a.m. until 2:00 p.m. during the weekdays, with occasional extensions until 4:30 p.m., and from 5:00 p.m. to 10:00 p.m. on Sundays, all without a break. Plaintiff approximates she worked 20 to 23.5 hours. Plaintiff worked exclusively for tips and did not receive a direct wage. Plaintiff was also required to remit a portion of her daily-earned tips, and if she did not earn enough tips that day to remit the required amount, she was required to pay personally. Plaintiff avers that none of the defendants operated a "tip pool" from which the

---

filed a joint status report that outlined diverging viewpoints between plaintiff and moving defendants regarding the need to address the instant motions prior to proceeding with further discovery. The court finds in its discretion that resolution of the instant motions, and proper framing of the pleadings, is required before proceeding with remaining case activities, as set forth further at the conclusion of this order.

[6]   Plaintiff describes the Raleigh restaurant location as the "defendants'," collectively, (Compl. ¶ 51), while moving defendants assert that complaint makes clear that "the two different restaurant locations where she was employed were owned and operated by . . . [d]efendants—Ayotlan, Inc. located in Raleigh . . . and Tequila, Inc. located in Morrisville." (Defs. Leonor Fabian & Navarro, Inc.'s Mem. (DE 120) at 5-6); Defs. Ramon Navarro & Mocambo, Inc.'s Mem. (DE 124) at 5-6; Defs. Alfonso Fabian Navarro & San Isidro, Inc.'s Mem (DE 122) at 5-6). As discussed below, it is reasonably inferable that the locations that plaintiff worked at are Los Tres Magueyes Raleigh, operated by non-moving defendant Ayotlan, Inc., and Los Tres Magueyes Morrisville, operated by non-moving defendant Tequila, Inc.

3

mandatory deductions would be distributed to other customarily tipped employees. (Compl. ¶ 64). Instead, the mandatory reductions were used to offset ordinary business expenses. Plaintiff alleges that other similarly situated workers were compensated in the same manner.

Plaintiff asserts that defendants, including moving defendants, collectively employed her and that they operate as a common, single enterprise. Plaintiff further asserts that the alleged compensation practices for tipped and non-tipped employees are a company-wide practice and policy of a common enterprise. Plaintiff asserts that defendants collectively control plaintiff's work schedule and rate of pay. Plaintiff's paychecks often list non-moving defendant Tequila, Inc., and her Internal Revenue Service W-2 forms specify non-moving defendant Ayotlan, Inc. (Compl. ¶¶ 22, 24).

As to the moving defendants specifically, plaintiff alleges the following. Defendant Leonor Fabian is the manager of defendant Navarro, Inc., which does business as "Los Tres Vaqueros" in Raleigh, North Carolina, and has its principal office in Wake Forest, North Carolina. Similarly, Defendant Ramon Navarro is president and owner of defendant Mocambo, Inc., which does business as "Los Tres Magueyes – Fuquay Varina" and has its principal office in Fuquay Varina, North Carolina.[7] Finally, defendant Alfonso Fabian Navarro is the president and registered agent of defendant San Isidro, Inc., which does business as "Los Tres Magueyes – Wake Forest" and has its principal office in Wake Forest, North Carolina.[8] The individual moving defendants are alleged to be close family members of non-moving defendant Eliborio Navarro, who is allegedly the original owner of twelve restaurants named in the complaint, which purportedly are vested in a single family unit.

---

[7] Defendant Ramon Navarro is also the vice president of non-moving defendant Los Tres Magueyes, Inc., which is located Danville, Virginia.

[8] Defendant Alfonso Fabian Navarro is also partial owner of non-moving defendant Jalisco, Inc.

4

# COURT'S DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).[9]

B.  Analysis

"[T]he FLSA establishes a federal minimum wage and requires employers to pay 'a rate not less than one and one-half times the regular rate' to employees who work more than forty hours in a single workweek." Salinas v. Com. Interiors, Inc., 848 F.3d 125, 133 (4th Cir. 2017) (quoting 29 U.S.C. § 207(a)(1)). Any FLSA claim is premised on an employer-employee relationship between the plaintiff and the defendant. Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016) ("FLSA conditions liability on the existence of an employer-employee

---

[9] Moving defendants assert that an employer-employee relationship is a "jurisdictional fact" that must be reviewed under the Rule 12(b)(1) standard. (E.g., Defs. Ramon Navarro & Mocambo, Inc.'s Mem. (DE 124) at 9). Based upon the law in this circuit, however, the court applies the Rule 12(b)(6) standard. See, e.g., Ndambi v. CoreCivic, Inc., 990 F.3d 369, 371-372 (4th Cir. 2021) (deciding whether plaintiffs constituted employees within the meaning of the FLSA for purposes of dismissal under Rule 12(b)(6)); Hall v. DIRECTV, LLC, 846 F.3d 757, 774 (4th Cir. 2017) (deciding the issue of whether plaintiffs had adequately alleged defendants were their employers under Rule 12(b)(6)'s standards).

relationship, and the employee bears the burden of alleging and proving the existence of that relationship.").

Under the FLSA, to employ means "to suffer or permit to work." 29 U.S.C. § 203(g). Further, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." Id. § 203(d). Relatedly, an "employee" is "any individual employed by an employer." Id. § 203(e)(1). "These definitions broaden 'the meaning of employee to cover some [workers] who might not qualify as such under a strict application of traditional agency [or contract] law principles.'" Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006) (alterations in original) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992)).[10]

Because an individual may be potentially employed by two different employers simultaneously, courts have considered whether those relationships, under the FLSA, constitute "separate and distinct employment" or "joint employment." Salinas, 848 F.3d at 133. The distinction is relevant under the FLSA because "joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek." Id. at 134 (internal quotation marks omitted) (quoting 29 C.F.R. § 791.2(a) (2017), amended by Joint Employer Status Under the Fair Labor Standards Act, 85 Fed. Reg. 2820 (Jan. 16, 2020) (codified at 29 C.F.R. § 791.2 (effective Mar. 16, 2020))).

---

[10] Because the definitions of "employ," "employer," and "employee" in the NCWHA are identical to those used in the FLSA, compare N.C. Gen. Stat. § 95-25.2(3) to (5), with 29 U.S.C. § 203(d), (e)(1), (g), the court's analysis of whether moving defendants are joint employers under the NCWHA is the same, for purposes of the instant motion, as that expressed in the text above under the FLSA. See, e.g., Laborers' Int'l Union of N. Am. v. Case Farms, Inc., 127 N.C. App. 312, 314 (1997) ("The North Carolina Wage and Hour Act is modeled after the Fair Labor Standards Act . . . ."); Powell v. P2Enterprises, LLC, 247 N.C. App. 731, 734 (2016) ("[I]n interpreting the NCWHA, North Carolina courts look to the FLSA for guidance." (quotation omitted)); cf. Hall v. DIRECTV, LCC, 846 F.3d 757, 767 (4th Cir. 2017) ("[O]ur resolution of the FLSA joint employment question also resolves Plaintiffs' claims under [the Maryland Wage and Hour Law].").

6

The United States Court of Appeals for the Fourth Circuit has "established a two-step framework for determining whether a defendant may be held liable for an alleged FLSA violation under a joint employment theory." Hall v. DIRECTV, LLC, 846 F.3d 757, 767 (4th Cir. 2017). First, the court "must determine whether the defendant and one or more additional entities shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work." Id. Only then will the court determine whether "the worker is an 'employee' within the meaning of the FLSA." Salinas, 848 F.3d at 140 n.8.

Here, there is no dispute as to whether plaintiff is an employee with the meaning of the FLSA, as was disputed in Salinas and in Hall. See, e.g., Hall, 846 F.3d at 774 (contemplating the discrete question of whether plaintiffs were independent contractors or employees); Salinas, 848 F.3d at 150 (same). Instead, the parties dispute whether the moving defendants were joint employers of plaintiff along with the other defendants; in other words, whether the moving defendants shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work with non-moving defendants, which, for the purposes of this motion are treated as undisputedly plaintiff's employers.

Under the first step of the Hall/Salinas inquiry the "fundamental question" is "whether two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine— formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." Salinas, 848 F.3d at 141 (quotation omitted); Hall, 846 F.3d at 769. To guide in this analysis, the Salinas court announced six non-dispositive factors that were reaffirmed in Hall:

> 1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means; (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—

7

hire or fire the worker or modify the terms or conditions of the worker's employment; (3) The degree of permanency and duration of the relationship between the putative joint employers; (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer; (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Salinas, 848 F.3d at 141-42; Hall, 846 F.3d at 769-70.[11]

Applying these factors, plaintiff has not pleaded sufficient, specific facts to raise her right to relief against the moving defendants above the speculative level.[12] While the court is mindful that the existence of "one factor alone . . . can give rise to a reasonable inference that plaintiffs will be able to develop evidence" establishing joint employment, see Hall, 846 F.3d at 771, here, plaintiff's general and conclusory allegations in regard to moving defendants do not give rise to that inference.

The complaint asserts that each defendant, including the moving defendants, was a joint employer of plaintiff. (Compl. ¶ 44). Plaintiff does not allege that she worked at any restaurants except for one located in Raleigh, which reasonably may be inferred to be Los Tres Magueyes owned by non-moving defendant Ayotlan, Inc., and one located in Morrisville, which reasonably may be inferred to be the Los Tres Magueyes owned by non-moving defendant Tequila, Inc. (See

---

[11] The court addresses further below the Department of Labor's promulgation in 2020 of new interpretative guidance on the joint employer issue under the FLSA, which moving defendants contend controls the analysis.

[12] Plaintiff's implication that a standard other than the familiar Iqbal-Twombly regime applies to joint employer cases, (see, e.g., Pl.'s Resp. (DE 126) at 23-24 (arguing that thorough examination of joint employment standards should not be conducted until after close of discovery), finds no support in binding law. Plaintiff must allege facts in her complaint that support her claim to relief against moving defendants, here, premised on a theory of joint employer liability. Accordingly, her complaint's well-pleaded facts must give rise to a reasonable inference that the moving defendants shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work with each other, with non-moving defendants, or some combination thereof. The factors used herein, announced by binding legal authority, guide that inquiry.

Compl. ¶ 1, 17, 22, 24).[13]  As to the corporate moving defendants, plaintiff does not include any specific allegations as to their distinct conduct and only alleges that they are businesses registered and operating in North Carolina.  (Compl. ¶¶ 26, 39, 41).  Plaintiff provides specific, albeit conclusory, assertions in regard to the individual moving defendants, stating that, upon information and belief, each "was actively involved in all of [the respective corporate moving defendant's] business operations, including, but not limited to, overseeing wages and payroll details for [p]laintiffs." (Id. ¶¶ 27, 40, 42).  This mirrors plaintiff's allegations for most of the individual defendants.  (See id. ¶¶ 19, 21, 23, 25, 30, 31, 35, 37).

The complaint additionally contains assertions as to defendants' activities as an undifferentiated whole.  Plaintiff asserts that all 24 defendants "maintain uniform pay practices and policies at all of their restaurant locations" and that they, collectively, "controlled . . . [p]laintiff's work schedule and rate of pay." (Id. ¶¶ 43, 57).  Plaintiff alleges that the restaurants are vested in a single-family unit with each individual restaurant location referenced in the complaint owned by the individual defendants.  (Id. ¶ 71).

Here, without crediting the complaint's legal conclusions couched as factual allegations, (see, e.g., id. ¶¶ 3, 44), the complaint does not contain factual matter sufficient to state a claim against moving defendants upon which relief can be granted under the FLSA.  In the light most favorable to plaintiff, the facts in the complaint do not give rise to the reasonable inference that moving defendants and one or more additional entities shared, agreed to allocate responsibility for,

---

[13]   None of the opt-in plaintiffs worked at moving defendants' specific restaurant locations either. (See Rivera Consent (DE 82-1) (Los Tres Magueyes Raleigh); Martinez Decl. (DE 84-7) ¶¶ 1-4 (Cary, Durham, and Cocula Raleigh); Ramos Consent (DE 82-3) (Los Tres Magueyes Raleigh); Nolasco Consent (88-1) (Los Tres Magueyes Raleigh); Godinez Consent (DE 93-1) (Durham)).

or otherwise codetermined the key terms and conditions of plaintiff's work.[14]  Application of the six Salinas factors as a whole further supports this determination.

First, the complaint leaves the court to speculate as whether moving defendants in conjunction with others shared power to direct, control or supervise plaintiff, herself beyond the simple, conclusory claim that they did (see, e.g., id. ¶ 56).  The complaint is devoid of further factual enhancement from which it could be reasonably inferred that the moving defendants had this ability.  That each of the restaurants are owned by members of the same extended family, absent further factual allegations, does not give rise to a reasonable inference that the moving defendants exercised such power within the family unit over other restaurants.  Further, despite plaintiff's commentary in her brief, the well-pleaded fact that plaintiff worked at non-moving defendants Ayotlan, Inc.'s restaurant and then Tequila, Inc.'s restaurant does not inferentially lead to the conclusion that defendants maintained a "practice of transferring employees from one restaurant location to another," (Pl.'s Resp. (DE 126) at 27),[15]  let alone moving defendants.

Second, there is no indication in the complaint that the moving defendants, either formally or as a matter of practice, could hire or fire workers, like plaintiff, at each other's restaurants, or that any of the defendants could otherwise modify the terms or conditions of the moving defendants' workers' employment.  Again, it is unreasonable to infer, and instead one would have to speculate, that plaintiff's successive employment at two non-moving defendants' restaurants

---

[14]  The court's reasoning in the instant analysis equally applies to the claims brought on behalf of the opt-in plaintiffs.  The court, of course, does not consider prospective class members' claims in its analysis.  See Cent. Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 188 (4th Cir. 1993) ("[I]t is essential that named class representatives demonstrate standing through a 'requisite case or controversy between themselves personally and [defendants],' not merely allege that 'injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting Blum v. Yaretsky, 457 U.S. 991, 1001 n.13 (1982)); accord Pashby v. Delia, 709 F.3d 307, 316 (4th Cir. 2013).

[15]  Unless otherwise stated, the court's reference to page numbers in a party's brief refers to the party's pagination of that document rather than the pagination assigned by the court's case management and electronic case filing system ("CM/ECF").

10

means that moving defendants swapped employees between themselves or with the non-moving defendants.

The third Salinas factor, the degree of permanency and duration of the relationship between the putative joint employers, weighs in plaintiff's favor. The complaint alleges that the restaurants are vested in a familial unit, and it supports this allegation with further factual enhancement, which must be viewed in the light most favorable to plaintiff. For example, the complaint contains elaboration on the overlapping corporate ties, (see, e.g., id. ¶¶ 27, 40), and details as to the permanency and familial nature of the relationship between all the defendants, (see, e.g., id. ¶¶ 71-73). However, that a single factor weighs in plaintiff's favor does not establish that she has stated a claim for relief under the FLSA contingent on a joint employer theory. See Hall, 846 F.3d at 771 ("[O]ne factor alone . . . can give rise to a reasonable inference . . . ." (emphasis added) (quotation omitted)). The essential question is whether the "[allegations] supporting that factor demonstrate that the person or entity has a substantial role in determining the terms and conditions of [plaintiff's] employment." See id. (first alteration in original) (emphasis added) (quoting Salinas, 848 F.3d at 142). Here, the permanency and duration of the familial relationship between moving defendants and the non-moving defendants — alone and viewed in light of the other Salinas factors — does not demonstrate that the moving defendants had a substantial role in determining the terms and conditions of plaintiff's employment.

Application of Salinas's fourth factor also fails to support plaintiff's claim that moving defendants took part in jointly employing her. Based on the complaint, some of the non-moving defendants share some management and are tied by a web of direct and indirect ownership interests, which, taken as a whole, evidences some level of common control amongst those

11

defendants. However, the same cannot be said for the moving defendants upon examination of the complaint.

Again, the mere allegation that the defendants shared management without further factual enhancement does not suffice. (See, e.g., Compl. ¶¶ 27, 40, 42, 57). Moreover, the operative question is whether through this sharing of management the moving defendants controlled or were controlled by each other or the non-moving defendants, which is not evidenced on the face of the complaint. For similar reasons, the fact that defendant Ramon Navarro is alleged to be vice president of Los Tres Magueyes, Inc. of Danville, another defendant,[16] and that Alfonso Fabian Navarro is alleged to be partial owner of non-moving defendant Jalisco, Inc. does not answer whether, through these purported ownership interests, the relevant defendants controlled one another. Cf., e.g., Irizarry v. Catsimatidis, 722 F.3d 99, 107 (2d Cir. 2013) ("Most circuits to confront this issue have acknowledged . . . that a company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA 'employer.'"); Brock v. Hamad, 867 F.2d 804, 808 n.6 (4th Cir. 1989) (per curiam) (noting "[e]ven if the businesses were within a corporate structure," individual was still clearly an employer within the meaning of the FLSA because "he hired and directed the employees who worked" for the business). Beyond the mere alleged fact of ownership interest or corporate position, the complaint contains no further, specific, factual enhancement that defendants Ramon Navarro and Alfonso Fabian Navarro exercised control of the other putative joint employers, one of which, defendant Jalisco, Inc. never directly employed plaintiff at its restaurant location, per the complaint (See Compl. ¶ 1, 17).

---

[16] Defendants Mocambo, Inc. and Ramon Navarro aver that the Los Magueyes, Inc. that defendant Ramon Navarro is vice president of is a distinct legal entity from non-moving defendant Los Tres Magueyes, Inc. Raleigh, despite plaintiff's allegation. (Defs. Ramon Navarro & Mocambo, Inc.'s Mem. (DE 124) at 6-7 n.1).

Fifth, there is no allegation in the complaint, direct or implicit, that the premises at which plaintiff worked during her two successive periods of employment were owned or controlled by the moving defendants. The complaint reveals that the moving corporate defendants operated separate premises than the non-moving defendants, (see id. ¶ 1), and that plaintiff did not complete work at those premises operated by moving defendants. The complaint does not contain factual allegations regarding any control the moving defendants had over the premises of the other locations owned by the non-moving defendants. The complaint does not contain facts supporting this factor that indicate the essential agreement to allocate responsibility for, or otherwise codetermine the essential terms and conditions of plaintiff's employment.

Sixth, plaintiff's conclusory statement that the individual moving defendants were involved in their respective corporate moving defendants' business operations including, but not limited to, overseeing wages and payroll details for plaintiff, without more, is not enough to raise a reasonable inference that the moving defendants in conjunction with each other or the non-moving defendants determined, shared, or otherwise allocated responsibility over functions ordinarily carried out by an employer such as handling payroll for plaintiff. Plaintiff's allegation that there was a uniform policy of underpaying employees, (see, e.g., id. ¶ 3), too fails even as a matter of pleading as it is not further supported by factual detail and contains a legal conclusion (that is, that plaintiff or others were underpaid). The complaint evinces control over plaintiff's wages by non-moving defendants Ayotlan, Inc., and Tequila, Inc., if any. (See id. ¶¶ 22, 24). Nor plaintiff does not allege that any defendant coordinated for plaintiff or the opt-in plaintiffs the provision of workers' compensation insurance; payment of payroll taxes; or provision of the facilities, equipment, tools, or materials necessary to complete the work of plaintiff.

In sum, review of plaintiff's complaint in light of the six factors announced by the Fourth Circuit does not reveal sufficient factual matter to raise her right to relief under the FLSA against moving defendants above a speculative level.

In addition, and in the alternative, plaintiff's claims fail under a recent interpretative regulation promulgated by the Department of Labor, Joint Employer Status Under the Fair Labor Standards Act, 85 Fed. Reg. at 2820, 29 C.F.R. § 791.2 (hereinafter, the "regulation"). This regulation supersedes previous regulatory guidance by the agency, upon which the Fourth Circuit relied in developing its factors in Salinas. See id. at 2832; Salinas, 848 F.3d at 137-38, 141. The regulation now envisions two potential joint employer scenarios, one that is not implicated here[17] and another where "the employee has an employer who suffers, permits, or otherwise employs the employee to work, but another person simultaneously benefits from that work," in which case "the other person is the employee's joint employer only if that person is acting directly or indirectly in the interest of the employer in relation to the employee." 29 C.F.R. § 791.2(a)(1). The regulation focuses the joint employer inquiry on "whether another person is benefitting from the employee's work." 85 Fed. Reg. at 2820.

Four factors, which the regulation adopts from the Ninth Circuit decision Bonnette v. California Health and Welfare Agency, 704 F.2d 1465 (9th Cir. 1983), guide this inquiry: "whether the other person . . . (i) [h]ires or fires the employee; (ii) [s]upervises and controls the employee's work schedule or conditions of employment to a substantial degree; (iii) [d]etermines the employee's rate and method of payment; and (iv) [m]aintains the employee's employment

---

[17] The regulation enumerates two common joint employer scenarios: the first, that described above, and a "second joint employer scenario" where "one employer employs a worker for one set of hours in a workweek, and another employer employs the same worker for a separate set of hours in the same workweek." 29 C.F.R. § 791.2(e)(1). The second scenario is not implicated by the facts alleged in the complaint, as conceded by plaintiff. (See Pl.'s Resp. (DE 126) at 17 (citing the portions of interpretative guidance considering the so-called first scenario)).

records." 85 Fed. Reg. at 2820; 29 C.F.R. § 791.2(a)(1).[18]  The type of control or degree of supervision that the regulation imagines in this type of case is "[i]ndirect control . . . exercised . . . through mandatory directions to another employer that directly controls the employee." 29 C.F.R. § 791.2(a)(3)(ii).  And "[a]cts that incidentally impact the employee . . . do not indicate joint employer status."  Id.

Just as with the six Salinas factors, plaintiff has failed to plead sufficient factual content that, applying the enumerated four factors in the regulation, gives rise to a reasonable inference that moving defendants benefited from her work.  The complaint, viewed as a whole and in the light most favorable to plaintiff, does not suggest that the moving defendants acted directly or indirectly in the interest of the non-moving defendants — plaintiff's undisputed employers for the purpose of resolving the instant motion — in relation to plaintiff.  As the regulation highlights, the moving defendants must have "actually exercise[d] . . . one or more . . . indicia of control" rather than merely had "such ability, power, or right alone." 29 C.F.R. § 791.2(a)(3)(i).

First, the complaint contains no factual allegations that moving defendants hired or fired her during either period of her employment.  Nor does the complaint contain any allegations regarding moving defendants' maintenance of employment records for plaintiff beyond the conclusory assertion that the individual moving defendants, along with the nine other individual defendants, oversaw the payroll details of plaintiff.  Further, the regulation explains that "[s]atisfaction of the maintenance of employment records factor alone will not lead to a finding of

---

[18]     Because the court finds that plaintiff's complaint fails to state a claim against the moving defendants under either set of factors, the court does not definitively resolve here the level of deference merited for the interpretative guidance in the regulation.  See, e.g., Elsayed v. Fam. Fare LLC, No. 1:18-CV-1045, 2020 WL 4586788, at *4 (M.D.N.C. Aug. 10, 2020) (explaining it would not defer to 29 C.F.R. § 791.2's interpretative guidance).  But see Clyde v. My Buddy the Plumber Heating & Air, LLC, No. 2:19-CV-756-JNP-CMR, 2021 WL 778532, at *2 (D. Utah Mar. 1, 2021) (deferring to 29 C.F.R. § 791.2's interpretative guidance).  In addition, the Department of Labor has noticed proposed rulemaking that would rescind, inter alia, the instant regulation.  See Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule, 86 Fed. Reg. 14,038 (Mar. 12, 2021) (to be codified at 29 C.F.R. pt. 791).

15

joint employer status," id. § 791.2(a)(2), and plaintiff has not satisfied this or any of the other factors in the regulation based solely on the facts in her complaint.

Relatedly, the complaint does not contain factual allegations supporting the interrelated factors of supervision/control of plaintiff's work schedule or conditions of employment to a substantial degree, or determination of plaintiff's rate and method of payment. Any impact on plaintiff's working conditions or rate of pay by the moving defendants inferable from the already conclusory allegations of the complaint fails to show direction or a substantial degree of control or supervision. Even presuming the bareboned allegation that defendants en masse oversaw plaintiff's wage and payroll details was able to be credited under Iqbal, 556 U.S. 662 at 681 (considering "allegations [that] are conclusory" and therefore "not entitled to be assumed true"), it fails to raise the reasonable inference that the moving defendants exercised control over the non-moving defendants through mandatory direction in regard to plaintiff's wages. As stated previously, the reasonable inference from the facts in the complaint is that non-moving defendants Ayotlan, Inc., and Tequila, Inc., had direct control over plaintiff's wages and payroll. No facts in the complaint implicate mandatory direction by moving defendants to non-moving defendants Ayotlan, Inc., and Tequila, Inc. Instead, any impact by moving defendants on plaintiff's rate and method of payment or conditions of employment that can be gleaned from the complaint, must be said to be incidental at most.

As with the Salinas factors, application of the regulation's factors leads to a conclusion that plaintiff has failed to allege sufficient facts to raise her right to relief above a speculative level.

Plaintiff argues nonetheless that the court should look to evidentiary documents filed in support of her previously-denied motion for conditional and class certification to bolster the

16

plausibility of her claims against moving defendants.[19]  The court acknowledges that in resolving a motion to dismiss it may "take judicial notice of matters of public record," Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015) (quotation omitted), such as the fact that prior filings have been made.  However, the court need not accept as true for purposes of the instant motion the substance of statements made by plaintiff, opt-in plaintiffs, or a non-moving defendant contained in the filings of this previously-denied motion in the same proceeding.  See Fed. R. Civ. P. 12(d).  Where dismissal in this instance is due to a lack of specificity in the allegations of the complaint, and these deficiencies may be curable by amendment, dismissal is without prejudice.  Accordingly, plaintiff will have the opportunity to incorporate factual allegations from other sources into the complaint, if she so chooses.

In sum, under the factors of either Salinas and Hall or the regulation, plaintiff has not pleaded adequate facts to support a theory of joint employer liability by the moving defendants.  Therefore, she has failed to state a claim upon which relief can be granted under the FLSA or the NCWHA.  Thus, the court must grant moving defendants' motions and dismiss without prejudice her claims against moving defendants for failure to state a claim upon which relief may be granted.

**CONCLUSION**

Based on the foregoing, the moving defendants' motions to dismiss (DE 119, 121, 123) are GRANTED.  Plaintiff's claims against defendants Navarro, Inc., Mocambo, Inc., San Isidro, Inc., Leonor Fabian, Ramon Navarro, and Alfonso Fabian Navarro are DISMISSED WITHOUT PREJUDICE.   Plaintiff may file a motion for leave to file a third amended complaint within **21 days** of the date of this order.  In the event plaintiff does not file motion for leave to amend, the

---

[19]    These documents include the deposition testimony of non-moving defendant Eliborio Navarro, the declaration of plaintiff, and the declarations of various opt-in plaintiffs.  (See Pl.'s Resp. (DE 126) at 22 n.2).

17

parties shall file a supplemental joint report and plan for conduct of further discovery within **21 days** of termination of the deadline to file leave to amend. If plaintiff timely files a motion for leave to amend, the court will continue stay of case activities pending resolution of that motion.

SO ORDERED, this the 15th day of April, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge